**The below described is SIGNED.**

**Dated: May 07, 2009**



**R. KIMBALL MOSIER**
**U.S. Bankruptcy Judge**



# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF UTAH

| In re: Steven L. Distad, <br>         Debtor. | Bankruptcy Number: 97C-27993 <br><br> Chapter 7 |
|---|---|
| Steven L. Distad, <br>         Plaintiff, <br><br> vs <br><br> United States Of America, <br>         Defendant. | Adversary Proceeding No. 07-02047 <br><br> Judge R. Kimball Mosier |

## MEMORANDUM OPINION

A motion brought by the Internal Revenue Service ("IRS) to dismiss this adversary proceeding came before the Court on April 23, 2009. Joel T. Zenger & Blake Miller of Miller Guymon, P.C. appeared on behalf of the Debtor, Steven L Distad (the "Debtor"), and Virginia

Cronan Lowe appeared on behalf of the IRS. The Court, having reviewed the pleadings and entertained argument of counsel, issues the following findings of fact and conclusions of law.

## JURISDICTION

This adversary proceeding was commenced by the debtor seeking a determination of whether a debt had been discharged in his bankruptcy proceeding, seeking injunctive relief under 11 U.S.C. § 524, seeking a determination of whether the Debtor's discharge injunction had been violated, and seeking an award of damages if such a violation was shown to have occurred. These are "Core" matters under 28 U.S.C. § 157(b)(2)(I), (J) and (O), and 28 U.S.C. § 1334, or are matters left to the exclusive jurisdiction of the bankruptcy court under 26 U.S.C. § 7433(e). Further, under 26 U.S.C. § 7433(d)(1), it is this Court's duty to determine if, and when, a debtor has exhausted his administrative remedies prior to seeking a monetary recovery of damages against the IRS in a bankruptcy court.

## DISCUSSION

On January 31, 2007, the Debtor commenced this adversary proceeding. An answer was filed by the IRS, the issues were briefed by both sides, and the matter went to trial on February 29, 2008. As is typical with disputes involving alleged violations of the automatic stay or violations of the discharge injunction, the Court handled this adversary proceeding with a two stage approach[1]. The first stage culminated with this Court's Memorandum Opinion dated August 8, 2008 (the "August 8th Opinion") a copy of which is attached as Exhibit "A".

---

[1] The first stage addresses the question of whether or not a violation of the automatic stay or discharge injunction took place. Stage one of this adversary proceeding resulted in the August 8th Opinion. Stage two only becomes necessary after a determination is made in Stage one that a right to damages has accrued.

The August 8th Opinion determined that the IRS had violated the Debtor's discharge injunction with respect to discharged debts from tax years 1986, 1987, 1988 and 1989. The Court found that the IRS had violated the Debtor's discharge injunction, and that as a result of that finding, the IRS was now subject to a claim for damages arising as a result of the violation. No monetary damages were awarded. The August 8th Opinion makes extensive findings of fact and is focused upon issued of law unrelated to the specific issue monetary damages. The Court's August 8th Opinion rests upon sound jurisdictional footings. It would be inappropriate to dismiss the entire adversary proceeding[2] and, as a result, render the August 8th Opinion without force or effect. At page 14 of the August 8th Opinion, the Court invited the parties to schedule an evidentiary hearing to address the issue of what monetary damages. To date, neither party has scheduled such an evidentiary hearing with the Court. The issue of monetary damages is not yet before the Court.

On March 11, 2009, the IRS filed a motion to dismiss to dismiss this adversary proceeding arguing that the Debtor has not exhausted his administrative remedies as required under 26 U.S.C. § 7433 and by Treas. Reg. § 301-7433-2(d). Because neither party has scheduled an evidentiary hearing as invited by this Court in it's August 8th Opinion, the IRS's motion to dismiss based upon a failure to exhaust administrative remedies is premature. A debtor must exhaust his administrative remedies as a condition precedent to seeking a recovery of damages against the IRS in the bankruptcy court. To date, the Debtor has not accepted this Court's invitation to seek a recovery of damages against the IRS by scheduling an evidentiary

---

[2] From the pleadings, it appears that the most that the IRS could possibly hope to achieve with its motion to dismiss would be an order of partial dismissal rather than dismissal of the entire adversary proceeding as is sought in the motion.

hearing to determine what monetary damages, if any, should be awarded. If and when such an evidentiary hearing is scheduled before this court, the issue of monetary damages will then be before the Court. The Court will then make a determination as required under 26 U.S.C. § 7433(d)(1) of whether or not the Debtor has exhausted his administrative remedies. Until such time as an evidentiary hearing is set to determine what monetary damages may be assessed against the IRS, the motion of the IRS to dismiss based upon the Debtor's failure to exhaust administrative remedies is premature.

---------------------------------------------END OF DOCUMENT-------------------------------------------

ORDER SIGNED

_____ooo0ooo_____

# SERVICE LIST

Service of the foregoing **Memorandum Opinion** will be effected through the Bankruptcy Noticing Center to the following parties.

Steven L. Distad
3809 S. 6800 W.
West Valley City, UT 84128

Joel T. Zenger
Miller Guymon, PC
165 South Regent Street
Salt Lake City, UT 84111

Virginia Cronan Lowe
US Dept. Of Justice
Tax Division
P.O. Box 683
Ben Franklin Station
Washington, DC 20044-0683

R. Craig Schneider
Office of Chief Counsel IRS
150 E. Social Hall Avenue
Suite 313A
Salt Lake City, UT 84111-1504

EXHIBIT "A"

**The below described is SIGNED.**

(kn)

**Dated: August 08, 2008**   _/s/ Glen E. Clark_
                              **GLEN E. CLARK**
                              **U.S. Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | ) |
| Steven L. Distad, | ) Bankruptcy Case No. 97C-27993 |
| Debtor. | ) Chapter 7 |
| Steven L. Distad, | ) |
| Plaintiff, | ) Adversary No. 07-02047 |
| -vs- | ) MEMORANDUM OPINION |
|  | ) REGARDING DISCHARGE OF |
|  | ) TAX DEBT AND VIOLATION |
|  | ) OF DISCHARGE INJUNCTION |
| United States of America, | ) |
| Defendant. | ) |

The trial in this adversary proceeding came before the Court on the twenty-ninth day of February, 2008 at 10:00 a.m.. The plaintiff, Steven L. Distad ("Distad"), represented himself *pro*

-1-

14

*se*. The Internal Revenue Service, an agency of the United States of America (the "IRS") was represented by Virginia Cronan Lowe of the United States Department of Justice. The following are the Court's findings of fact and analysis of law:

## JURISDICTION

This controversy involves a question of whether Distad's 1992 income tax liability was discharged in bankruptcy, whether a violation of Distad's bankruptcy discharge injunction occurred, and if so, what sanctions should be imposed. These issues are "Core" matters under 28 U.S.C. § 157(b)(2)(I) and (O), and 28 U.S.C. § 1334.

## FINDINGS OF FACT

1. Distad filed his first bankruptcy petition on March 10, 1992. This case was dismissed on December 28, 1992.

2. Distad filed his tax year 1992 tax return on April 15, 1993.

3. Distad filed his second bankruptcy petition on February 9, 1993. This case was dismissed on August 26, 1994.

4. Distad filed his third bankruptcy petition on November 15, 1994. This case was dismissed on June 19, 1995.

5. Distad filed his fourth bankruptcy petition on July 29, 1996. This case was dismissed on September 19, 1996.

6. Distad filed his fifth bankruptcy petition on September 8, 1997. This case was converted to a Chapter 7 case on November 18, 1997, and Distad received a Chapter 7 discharge on October 23, 1998.

7. In order for a debtor in bankruptcy to discharge a tax measured by income under 11 U.S.C. §§ 523(a)(1)(A)[1] and 507(a)(8), a period of three years must run from the date a debtor files his tax return and the date a debtor files his bankruptcy petition.

8. There are 1096 days in a three year period.

9. Between April 15, 1993, the day that Distad filed his 1992 tax return, and September 8, 1997, the day that Distad filed his fifth bankruptcy, there are 1,607 days.

10. Between April 15, 1993 and September 8, 1997, Distad was involved in three separate bankruptcy proceedings and protected by the automatic stay provided under § 362 of the United States Bankruptcy Code (the "Code") for a total of 766 days.

11. Between April 15, 1993, and September 8, 1997, Distad was outside of bankruptcy and not protected by the automatic stay for a total of 841 days.

12. The IRS made an administrative determination that Distad's 1986, 1987, 1988 and 1989 federal income tax liabilities had not been discharged by his Chapter 7 bankruptcy.

13. The IRS's determination regarding Distad's 1986, 1987, 1988 and 1989 federal income tax liabilities was based on an IRS policy to "toll" the time period during which a debtor's bankruptcy case was open and pending and to add an additional six months to

---

[1] Unless otherwise indicated, all statutory references in this Opinion are to Title 11 of the United States Code.

07-02047                                    -3-

the "tolled" time period for each bankruptcy petition filed by a debtor (the "IRS Equitable Tolling Policy").

14. The IRS would then determine whether or not a debtor's income tax had been discharged by disregarding any tolled period for purposes of computing the three year period described in § 507(a)(8)(A)(I) (the "Three Year Lookback Period").

15. The IRS Equitable Tolling Policy was based, in part, upon the IRS's interpretation of 26 U.S.C. § 6503(h).

16. The IRS Equitable Tolling Policy was in effect as early as October 1998.

17. On March 4, 2002, the United States Supreme Court issued its opinion in Young v. U.S., 535 U.S. 43 (2002), which ruled that the Three Year Lookback Period was equitably tolled only during the time period that the IRS was disabled from protecting its claim during the pendency of a bankruptcy petition.

18. The IRS, as the respondent in Young v. U.S., litigated the question of equitable tolling before the United States Supreme Court.

19. In the year 2000, the IRS began attempting to collect debt from Distad claimed to be owed to the IRS for tax years 1986, 1987, 1988, 1989 and 1992. The IRS's attempts to collect continued well into 2007.

20. On August 24, 2000, the IRS filed a Notice of Federal Tax Lien with the County Recorder for Salt Lake County, Utah. The Notice of Federal Tax Lien listed tax liabilities for the years 1986, 1987 and 1989.

21. On July 5, 2006, the IRS issued a levy which was served on Distad's employer. The liabilities described in the levy were for the tax years 1986, 1987, 1989, and 1992.

22. On September 18, 2006, Distad sent a letter to the IRS requesting that the IRS cease collection efforts upon debt that had been discharged in bankruptcy.

23. On December 5, 2006, the IRS issued a levy which was served on Distad's employer. The liabilities described in the levy were for the tax years 1986, 1987 and 1989.

24. On December 18, 2006, the IRS filed a Notice of Federal Tax Lien with the County Recorder for Salt Lake County, Utah. The Notice of Federal Tax Lien listed tax liabilities for the years 1986, 1987, 1988, 1989, 1992 and 2001.

25. On January 19, 2007, the IRS served a levy on Wells Fargo Bank, Distad's bank. The liabilities described in the levy were for the tax years 1986, 1987 and 1989.

26. On January 19, 2007, the IRS served a wage levy on Distad's employer. The liabilities described in the levy were for the tax years 1986, 1987, 1988, 1989 and 1992.

27. On January 28, 2007, Distad was terminated from his employment.

28. On January 31, 2007, this adversary proceeding was commenced by Distad.

29. Distad's claim for damages includes a claim that the IRS's actions caused the termination of his employment and damaged the quality of his life in the form of emotional distress, mental anguish, and inability to sleep.

30. Distad asserts that the IRS's actions also adversely affected the quality of life of his family members.

31. On March 21, 2007, the IRS issued manual refunds of all monies received after the September 8, 1997 petition date that were applied to the tax years 1986 through 1989.

32. The IRS represents that it will reimburse Distad for bank fees incurred in the amount of $646 with regard to the levy on his bank accounts at Wells Fargo Bank.

33. The IRS has not waived sovereign immunity.

34. Distad has represented himself, *pro se*, throughout this adversary proceeding and has not yet incurred attorney fees.

35. The IRS does not dispute that any debt owed to the IRS by Distad for tax years 1986, 1987, 1988 and 1989 was discharged by his Chapter 7 bankruptcy (the "Discharged Debt").

36. Based upon the IRS Equitable Tolling Policy in existence during 1998, the IRS argues that all of its actions to collect the Discharged Debt were taken in good faith.

## ANALYSIS

The dispute between Distad and the IRS is twofold: 1) Was Distad's 1992 tax liability discharged by the Chapter 7 discharge issued to him on October 23, 1998, and 2) What damages, if any, should be awarded in favor of Distad and against the IRS for the violation of Distad's discharge injunction.

### The 1992 Tax Liability

Pursuant to § 507(a)(8), when read in conjunction with § 523(a)(1)(A), a debtor's income taxes may be discharged in a bankruptcy if a period of three years has run between the date of filing of a debtor's income tax return and the petition date of debtor's bankruptcy. This Three Year Lookback Period may be equitably tolled if the debtor filed bankruptcy and enjoyed the protections of the automatic stay at any time within the Three Year Lookback Period.

Distad argues that even with the application of equitable tolling, his tax liability for tax year 1992 was discharged in his Chapter 7 bankruptcy because a three year period ran between the date of filing of a his 1992 tax return and the petition date of his Chapter 7 bankruptcy. There are 1096 days in a three year period. Distad filed his 1992 tax return on April 15, 1993. Distad filed his Chapter 7 bankruptcy petition on September 8, 1997. Between April 15, 1993 and September 8, 1997, Distad was involved in three separate bankruptcies. The total number of days between April 15, 1993 and September 8, 1997 is 1,607 days. The total number of days between April 15, 1993 and September 8, 1997 during which Distad enjoyed the benefit of the automatic stay in bankruptcy was 766 days. The difference between 1,607 days and 766 days is 841 days. When equitable tolling is taken into account, less than a three year period ran between the date that Distad filed his 1992 tax return and the date that he filed his Chapter 7 bankruptcy proceeding. Accordingly, Distad's 1992 tax liability was not discharged in his Chapter 7 bankruptcy.

### Damages for Violation of Distad's Discharge Injunction

This matter involves the violation of the debtor's discharge injunction found under 11 U.S.C. 524(a). Section 524 operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any personal liability of a debtor. "Under § 105(a), bankruptcy courts have the equitable power to enforce and remedy violations of substantive provisions of the Bankruptcy Code, including in particular the discharge injunction in § 524(a)(2)." Paul v. Iglehart (In re Paul), No. 07-1395, 2008 WL 2877476, at *3 (10th Cir. July 28, 2008). Section 524 does not create a cause of action for

damages itself. Violations of § 524 are treated as civil contempt. Remedies may be made within the discretion of the court under the court's inherent contempt powers and the court's statutory contempt powers found under § 105(a). Section 105(a) grants bankruptcy courts "independent statutory powers to award monetary and other forms of relief for automatic stay violations to the extent such awards are 'necessary or appropriate' to carry out the provisions of the Bankruptcy Code." Jove Engineering, Inc. v. IRS, 92 F.3d 1539, 1554 (11th Cir. 1996). Section 105(a) provides that the Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of Title 11 of the United States Code. The court has the power to issue any order which is necessary or appropriate to protect the debtor's estate. Dalton Development Project #1 v. Unsecured Creditor's Committee (In re Unioil), 948 F.2d 678, 682 (10th Cir. 1991). This power includes issuing monetary sanctions for civil contempt. Mountain America Credit Union v. Skinner (In re Skinner), 917 F.2d 444, 448 (10th Cir. 1990).

Civil contempt sanctions may "be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained. Where compensation is intended, a fine is imposed, payable to the complainant. Such fine must of course be based upon evidence of complainant's actual loss . . . ." Law v. National Collegiate Athletic Ass'n, 134 F.3d 1438, 1442 (10th Cir. 1998). The complainant must put on credible evidence showing the amount of the loss sustained. "[I]n the absence of evidence showing the amount of the loss, any sum awarded by the court is speculative and therefore arbitrary." Allied Materials Corp. v. Superior Products Co., Inc., 620 F.2d 224, 227 (10th Cir. 1980).

It is not alleged that the IRS continues to violate the discharge injunction, only that the violation occurred in the past[2]. Thus, there is no need for the Court to issue a coercive sanction against the IRS, and the Court is left only to consider a civil contempt sanction to compensate Distad for his actual losses.

**Damages prior to March 4, 2002.** Prior to March 4, 2002, the IRS, as an administrative agency of the United States government, acted within its discretion to establish a policy of adding an additional six months to the Three Year Lookback Period under 26 U.S.C. § 6503(h). Congress has granted many administrative entities broad discretion in the use of their regulatory power. Board of Governors of Federal Reserve System v. Mcorp Financial, Inc., 502 U.S. 32, 40 (1991). The well-reasoned views of the agencies implementing a statute constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. Considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer. United States v. Mead Corp., 533 U.S. 218, 227-28 (2001).

Prior to March 4, 2002, the IRS effectively defined how the doctrine of equitable tolling would be applied with respect to the Three Year Lookback Period and, as such, its policy to add an additional six months to the tolling period for purposes of measuring the Three Year Lookback Period was appropriate. Until Young v. U.S. was decided, the IRS's interpretation of equitable tolling controlled and no violation of Distad's discharge injunction can be found.

---

[2] It appears that the IRS ceased its violations of the discharge injunction only after this adversary proceeding was commenced by Distad.

07-02047                                -9-

**Damages after March 4, 2002.** The analysis changes with respect to IRS collection activity that occurred after March 4, 2002. It is undisputed that the IRS knew the exact dates of each of Distad's bankruptcy petitions, the exact date of Distad's chapter 7 discharge and the dates upon which Distad's bankruptcy proceedings were dismissed or closed[3]. It is undisputed that the IRS was a party to the proceeding before the United States Supreme Court in the matter of Young v. U.S.. The law changed on March 4, 2002 as a result of Young v. U.S. and the IRS knew it. No deference is owed to an agency's decision that is clearly wrong. When an agency's decision runs contrary to Supreme Court precedent, the agency's decision will be reversed. Cherokee Nation of Oklahoma v. Norton, 389 F.3d 1074 (10th Cir. 2004). The IRS's procedure to add an additional six months to the Three Year Lookback Period became contrary to the law on March 4, 2002, the day Young v. U.S. was decided. Nowhere in Young v. U.S. did the Court reference an additional six month period during which equitable tolling might occur. Any action taken after March 4, 2002 to collect the Discharged Debt was taken by the IRS knowingly, willfully and contrary to the law.

It is irrelevant that the IRS believed that its collection activity was done in good faith and in conformance with IRS policy. Once it is established that a creditor had knowledge of a debtor's bankruptcy, the creditor's good faith belief that it had a right to the property is irrelevant to the question of the creditor's willfulness. Johnson v. Johnson (In re Johnson), 501 F.3d 1163, 1172 (10th Cir. 2007). "A garnishing creditor has an affirmative duty to release the garnishment

---

[3]Pursuant to § 362(c)(2), the automatic stay triggered by the filing of a bankruptcy petition continues until the earliest of either the time the bankruptcy case is closed, the time the bankruptcy case is dismissed or, in the case of a chapter 7 bankruptcy, the time a discharge is granted or denied.

of a debtor's wages as soon as it learns of the pending bankruptcy." In re Scroggin, 364 B.R. 772, 779 (10th Cir. BAP 2007). The IRS's efforts to collect the Discharged Debt after March 4, 2002 violated Distad's discharge injunction, and as a result, subjects the IRS to damages arising as a result of the violation.

**Punitive Damages**. It is not an abuse of discretion to award punitive damages for the willful violation of the automatic stay even where the creditor believed in good faith that it had a right to the property. Diviney v. NationsBank of Texas N.A. (In re Diviney), 225 B.R. 762 (10th Cir. BAP 1998). Where a defendant knows that certain conduct is prohibited but nonetheless engages in the prohibited conduct, punitive damages become an important tool. "Certainly, evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law." BMW of North America, Inc. v. Gore, 517 U.S. 559, 576-77 (1996).

Continental Trend Resources, Inc. v. OXY USA Inc., 101 F.3d 634 (10th Cir. 1996) describes the circumstances under which a court may award punitive damages in excess of a ten to one ratio when compared to the amount of economic damages. Were the IRS not protected by sovereign immunity in this adversary proceeding, the Court would not hesitate to award punitive damages well above a ten to one ratio. Because the IRS is an agency of the United States government, the Court must determine whether the IRS's assertion of sovereign immunity blocks the award of punitive damages.

At least one court has ruled that punitive damages may be awarded against the IRS for violation of the automatic stay. In re Gault, 136 B.R. 736 (Bankr. E.D.Tenn. 1991). However, the Bankruptcy Reform Act of 1994 amended the United States Bankruptcy Code to address the issue of punitive damages by adding § 106(a)(3) which states as follows:

> (3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages. Such order or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28.

11 U.S.C. § 106(a)(3).

Punitive damages are specifically excluded from the waiver of sovereign immunity under § 106(a)(3). The IRS has asserted sovereign immunity as an affirmative defense[4], and the Court finds that the IRS has not waived sovereign immunity[5]. Because the IRS has affirmatively plead sovereign immunity and because there has been no waiver of sovereign immunity, the Court is prohibited from awarding punitive damages regardless of how egregious the IRS's violation of Distad's discharge injunction may have been.

**Monetary Damages.** The damages that may be awarded are monetary damages that resulted from the violation of Distad's discharge injunction. Section 106(a)(3) specifically allows for an order, process, or judgment awarding a money recovery, which is exactly what the

---

[4]Immunity from suit is an affirmative defense that must be pleaded. Bentley v. Cleveland County Board of County Commissioners, 41 F.3d 600 (10th Cir. 1994).

[5]The waiver of sovereign immunity, in order to be effective, must be unequivocally expressed. U.S. v. Nordic Village Inc., 503 U.S. 30, 33 (1992).

Court will allow. Distad should be awarded monetary damages for any losses that were proximately caused by the violation of Distad's discharge injunction.

> The standard definition of proximate cause is 'that cause which, in natural and continuous sequence, (unbroken by an efficient intervening cause), produces the injury and without which the result would not have occurred. It is the efficient cause-the one that necessarily sets in operation the factors that accomplish the injury.'

Mitchell v. Pearson Enterprises, 697 P.2d 240, 245-46 (Utah 1985) (quoting State v. Lawson, 688 P.2d 479, 482 n.3 (Utah 1984).

By this standard, Distad may seek compensation for: 1) any monetary loss which was produced in a natural and continuous sequence as a result of the discharge violation without which a monetary loss would not have occurred, or 2) any monetary loss necessarily set in operation as a result of the discharge violation. The IRS may defend by producing evidence to show that the sequence of Distad's loss or losses was broken by an intervening cause. Monetary losses for which Distad should be compensated include, but are not limited to: 1) attorney fees[6] and costs, 2) fines, penalties, surcharges, and late fees paid to creditors that resulted from the discharge violation, 3) costs of litigation including filing fees, research expenses and photocopy expenses, 4) loss of income from any loss of employment including any costs resulting from the loss of health care benefits incident to the employment, 5) any loss of equity in a home or other property, and 6) any costs incurred for psychological, psychiatric, mental health counseling, or other costs arising from mental distress. Distad should be compensated for all of these losses if he can show by credible evidence that the discharge violation committed by the IRS was the

---

[6]This includes reasonable attorney fees and costs incurred in preparation for and attendance at the evidentiary hearing contemplated by this opinion.

proximate cause of the losses. In addition to showing that the discharge violation was the proximate cause, the evidence must provide the Court with sufficient information concerning the actual monetary loss with which to make specific[7] findings.

Each of the parties is invited to schedule[8] an evidentiary hearing[9] before this Court to put on evidence relevant to the monetary damages to be awarded to Distad.

End of Document

---

[7]To impose sanctions, a court must make specific findings. <u>Braley v. Campbell</u>, 832 F.2d 1504, 1513 (10th Cir. 1987) (en banc).

[8]In the event that the hearing is scheduled by the IRS, sufficient time should be provided to Distad in order to allow him to assemble the necessary evidence to support his claims.

[9]Admission of evidence at the hearing will be governed by the Federal Rules of Evidence.